Grafton
No. 87-381

CATHERINE BARTON & a.

v.

H.D. RIDERS MOTORCYCLE CLUB, INC. & a.

October 31, 1988

*Nighswander, Martin & Mitchell P.A.*, of Laconia (*Walter L. Mitchell* on the brief and orally), for the plaintiffs.

*Normandin, Cheney & O'Neil*, of Laconia (*James F. Lafrance* on the brief and orally), for the defendant Motorcycle Club.

*Daniel D. Crean*, of Concord, by brief and orally, for the defendant Town of Campton.

SOUTER, J. The private corporate defendant appeals from an order of the Superior Court (*Smith*, J.), which enjoined construction of a shed intended for use in connection with private recreational activities, and required removal of the partially completed structure as having been built in violation of the zoning ordinance of the defendant Town of Campton. We vacate and remand.

The defendant H.D. Riders Motorcycle Club, Inc. (the club), a non-profit corporation with members having a common interest in motorcycles, owns 14.5 acres of land in Campton, abutting land of the plaintiff Ram Sinha and neighboring that of the plaintiff Catherine Barton. In October, 1985, the Campton selectmen issued a permit authorizing the club to build a shed on the property. After the club had obtained building materials and had begun construction of a road across the site, on which it had by then placed a privy, Barton appealed the issuance of the building permit to the town's

zoning board of adjustment, which revoked it. When the club started to build the shed anyway, Barton and Sinha began the instant proceeding against the club and the Town of Campton, seeking both an injunction against further construction and an order requiring removal of the partially completed building. They claimed the construction would lead to abridgments of their rights to use and enjoy their own property and constituted a violation of the town's zoning provisions, in that the shed was intended for use in the course of recreational activities prohibited by the zoning ordinance. *See* RSA 676:15.

■■ The club's appeal from the injunction and removal order turns on relatively simple issues. We find nothing persuasive in the club's threshold argument that the record is devoid of any evidence that either plaintiff was "specially damaged" by the alleged violation of the ordinance, a statutory condition of a property owner's standing to seek injunctions or abatement orders to cure a zoning violation. *See* RSA 676:15. This requirement mirrors the familiar burden to plead and prove special damages as a prerequisite to equitable relief, when sought by a private party to remedy what would otherwise be treated solely as a public nuisance, *see Urie v. Franconia Paper Co.*, 107 N.H. 131, 133, 218 A.2d 360, 362 (1966). Generally, the private plaintiff must show that the public nuisance has caused or threatens to cause him damage of a different kind from the harm to the general public, *see* RESTATEMENT (SECOND) OF TORTS § 821(c)(1), the clearest example of which is an interference with the use and enjoyment of the plaintiff's own land, *id.* comment *e*. The statute in question here employs the concept of special damage to identify those private landowners who may seek relief from actual or threatened infractions of a municipal ordinance that would otherwise be subject to enforcement under State law only by municipal officers, *see* RSA 676:15, and the apparent object of the provision is to identify those landowners whose use and enjoyment of property is particularly affected by a given zoning violation. The requirement was satisfied in this case by evidence that Sinha's land abuts a tract on which an allegedly illegal recreational development would attract motorcyclists in numbers conceded to be as many as fifty at a time, and by evidence that Barton's land is located on the dead-end road that the cyclists would travel to reach the recreational area.

There is merit, however, in the club's further claim that the relevant provision of the zoning ordinance may not be construed so as to bar the club's recreational use of its land. The provision in question reads that

"A. . . . The following provision[ ] will apply to the whole town.
  4. Public parks, golf courses, and other recreational uses are permitted throughout the Town of Campton."

CAMPTON ZONING ORDINANCE, IV.A.4. This ordinance is in "permissive" form, having the legal effect of prohibiting uses for which it does not provide permission, *see Treisman v. Kamen*, 126 N.H. 372, 375, 493 A.2d 466, 470 (1985). What it permits is the subject of the present dispute.

It is not, of course, clear whether "public" is meant to modify not only "parks," but "golf courses and other recreational uses," as well. Thus, either all recreational uses are intended to be permitted, or only "public" recreation is meant to be allowed. In the latter case, given the permissive nature of the ordinance, it would follow that all private recreational use of land was prohibited where it could not be justified as an accessory use of property used principally for some other, permitted purpose, such as personal residence. *See Town of Salem v. Durrett*, 125 N.H. 29, 32, 450 A.2d 9, 11 (1984) (accessory use may not be principal use); 3A N. WILLIAMS, JR. & J. TAYLOR, AMERICAN LAND PLANNING LAW § 74:14, at 221 (1975) ("principal use . . . must actually be in existence before an accessory use can be subordinate to it . . . .").

The ambiguity is not, however, a source of much comfort to the town in this case. If the ordinance should be construed so that all recreational uses are permitted, then it would not prohibit the club's use of its land for private recreation; if it should be construed to prohibit all non-accessory private recreational activity, there would be, on the face of it, a basis in the ordinance for prohibiting the club's intended use, but the interpretive process would have produced an absurd result, inasmuch as any private recreational use of undeveloped land would become a zoning violation. *Cf. State v. Kay*, 115 N.H. 696, 698, 350 A.2d 336, 338 (1975) (interpretation productive of absurd result is to be avoided).

The plaintiffs and the town seek to escape this dilemma by arguing in effect that the trial court correctly chose a third way to view article IV.A.4. The court found that the ordinance was "sufficiently clear to inform an individual that a large-scale, privately run, private campground of the type proposed . . . was forbidden." Neither the plaintiffs nor the town, however, have pointed to any provision of the ordinance that might be read to support the court's judgment, and the club naturally rejoins that if the ordinance is to be understood as prohibiting some private recreational uses, which the club describes as "public-oriented," but

not others, the provision in question fails to meet the standard of clarity required of municipal ordinances and is therefore unenforceable. The club is right.

██ ██ "Generally, a municipal ordinance must be framed in terms sufficiently clear, definite and certain . . . that an average [person] after reading it will understand when he is violating its provisions." *Town of Freedom v. Gillespie*, 120 N.H. 576, 580, 419 A.2d 1090, 1092 (1980) (citation omitted). A reference to "sufficient" clarity is, of course, a criterion of reasonableness, and our prior cases have avoided any suggestion that a fussy standard of technical drafting should be applied in passing on the validity of municipal or administrative regulations. *See, e.g., Carbonneau v. Town of Rye*, 120 N.H. 96, 98, 411 A.2d 1110, 1112 (1980) ("injurious, noxious or offensive to the neighborhood" an enforceable standard); *see also In re Doe*, 123 N.H. 634, 642, 465 A.2d 924, 929 (1983) (authoritative construction can cure vagueness); *Appeal of Plantier*, 126 N.H. 500, 513, 494 A.2d 270, 278 (1985) (otherwise vague statute not unenforceable where applicable "without question"). That is, a mere want of precision, *Town of Freedom v. Gillespie supra*, will not overcome the presumption of validity that a municipal enactment enjoys. *See Town of Nottingham v. Harvey*, 120 N.H. 889, 892, 424 A.2d 1125, 1127 (1980).

██ What is significant about the ordinance in this case, however, is its apparent failure to indicate by any textual hint that different private recreational uses may be subject to different treatments. We have not been cited even to a qualitative word or conclusory phrase suggesting that privately-run recreational uses on a large scale are forbidden, whereas others are not. Although plaintiffs' counsel in his brief has described the intent underlying article IV.A.4 as being the regulation of "private property to the extent that a legitimate public purpose would be served," the discernment of a "legitimate public purpose" was, on this view, left entirely to enforcement authorities without so much as an explicit indication that a line could be drawn. Since any such construction of the ordinance would represent the antithesis of the rule of law, we must reject the interpretation and again face the alternatives of complete freedom for recreational use or complete prohibition of non-accessory private recreational use. To avoid the absurd, we must adopt the former construction and vacate the injunction. Given the state of the record, we intimate no opinion about what the superior court should do upon remand, beyond dismissing the claim of zoning violation.

Although the club has asked for counsel fees, it has not argued that our rules on fee awards should be broadened to cover instances in which the party seeking fees prevails for the first time only on appeal. We therefore see no occasion to consider such an award. *See generally Keenan v. Fearon*, 130 N.H. 494, 543 A.2d 1379 (1988); SUP. CT. R. 23.

*Vacated and remanded.*

All concurred.