Grafton
No. 2007-702

PRESTON T. KELSEY, II & a.

v.

TOWN OF HANOVER

Argued: May 21, 2008
Opinion Issued: August 20, 2008

*Stebbins Bradley Harvey Miller & Brooks, P.A.*, of Hanover (*Stephen P. Girdwood* on the brief and orally), for the petitioners.

*Mitchell & Bates, P.A.*, of Laconia (*Walter L. Mitchell* and *Laura A. Spector* on the brief, and *Ms. Spector* orally), for the respondent.

BRODERICK, C.J. The petitioners, Preston T. Kelsey, II, Virginia R. Kelsey, Dirk J. Van Leeuwen, Frank Holloway, Ann Holloway, Robert McLaughry and Ann McLaughry, appeal the decision of the Superior Court (*Vaughan*, J.) upholding the dismissal of their appeal of a zoning permit granted by the respondent, the Town of Hanover (Town), to Jerry and Claire Strochlic. We affirm.

I

The following facts were found by the Town of Hanover Zoning Board of Adjustment (ZBA), recited by the superior court, or are supported by the record. In November 2005, the Strochlics purchased property located at 1 Weatherby Terrace. The property has an unusual configuration. At its north end it has twenty feet of frontage on Weatherby Road. This narrow width extends southerly past adjacent wider lots whereupon the property broadens to the west into a buildable area. Neighbors have an easement over the twenty-foot wide strip for access to Weatherby Road from their homes to the east and south. The easement is paved and known as Weatherby Terrace, a private right-of-way. The Strochlics sought permits to raze an existing house on their property and construct a new one. The Town issued a zoning permit to them on April 28, 2006. The permit allowed the new home to be located on the lot in conformity with the Town's setback requirements for frontage on Weatherby Road, not from Weatherby Terrace. A building permit was issued on July 24, and a demolition permit was issued on September 19.

Two of the petitioners, Ann Holloway (Holloway) and Virginia Kelsey (Kelsey), met with the Town's zoning administrator in the fall of 2005 and again in late May 2006 to inquire about the Strochlics' project. In October 2006, the Strochlics' house was demolished and stakes for the new foundation were fixed. On October 25, the petitioners filed an appeal with the ZBA contesting the issuance of the zoning permit. At the hearing before the ZBA, they argued that Weatherby Terrace, a private right-of-way, should be considered a "street" in accordance with the Town's zoning ordinance, and thus the setback requirements for frontage of the

Strochlics' proposed residence should have been calculated from Weatherby Terrace, and not from Weatherby Road. They responded to the Town's contention that their appeal was untimely by arguing that they had reasonably relied upon representations of the zoning administrator that they would be directly notified of any progress in the Strochlics' project and, thus, did not appeal the zoning permit within fifteen days as required by the local ordinance. The ZBA dismissed the appeal, concluding that it lacked jurisdiction because the appeal was untimely. *See Daniel v. B & J Realty*, 134 N.H. 174, 176 (1991) (compliance with procedural deadline for filing appeal is necessary prerequisite to establishing jurisdiction in appellate body). The petitioners' motion for rehearing was denied. The superior court, *see* RSA 677:4 (2008), subsequently upheld the decision of the ZBA, and this appeal followed.

## II

A party seeking to have the superior court set aside a decision of a ZBA bears the burden of establishing that its decision was unlawful or unreasonable. *Greene v. Town of Deering*, 151 N.H. 795, 797 (2005). The findings of fact made by a ZBA are deemed *prima facie* lawful and reasonable. *Harrington v. Town of Warner*, 152 N.H. 74, 77 (2005). We will uphold the superior court's affirmance or denial of a ZBA decision unless its ruling is unsupported by the evidence or legally erroneous. *Id.*

Under RSA 676:5, I (2008), appeals to the ZBA "shall be taken within a *reasonable time*, as provided by the rules of the board, by filing with the officer from whom the appeal is taken and with the board a notice of appeal specifying the grounds thereof." (Emphasis added.) The Town's zoning ordinance prescribes the "reasonable time" for appealing the issuance of a zoning permit as fifteen days and identifies public posting of the permit as the method for providing notice. *See* TOWN OF HANOVER ZONING ORDINANCE §§1001.6, 1005.2C (1). Section 1001.6 provides in pertinent part:

No Zoning Permit issued hereunder shall take effect until fifteen days have passed after its issuance. Within three days following the issuance of a Zoning Permit, the Zoning Administrator shall post a copy of this permit in at least one public place until fifteen days have elapsed from the date of its issuance . . . .

During this fifteen-day period, an appeal of the Zoning Permit may be filed with the Zoning Board in accordance with RSA 676:5 . . . .

Section 1005.2C (1) reiterates the fifteen-day appeal period:

Any appeal taken from any decision of the Zoning Administrator shall be taken within fifteen (15) days of the date of the decision

except for decisions that a violation exists. With regard to decisions by the Zoning Administrator that there has been a violation of the Zoning Ordinance, the alleged offender shall have seven (7) days from the date of receipt of the Notice of Violation to appeal the decision of the Zoning Administrator.

The petitioners do not challenge the facial validity of the fifteen-day time limit for appeals to the ZBA or the manner used for providing notice that a permit has been issued. Rather, they advance four arguments. First, they contend that due process bars the strict application of the fifteen-day appeal period due to the unique circumstances of this case. Second, they contest the trial court's ruling that no evidence exists to suggest that they were misled by the zoning administrator. Third, they argue that they offered sufficient evidence in the trial court to meet their burden of proof that the decision of the ZBA was unreasonable. Finally, they contend that the zoning administrator failed in her constitutional duty to provide assistance to them as citizens, thereby interfering with their right and ability to properly appeal. We address each argument in turn.

### III

We turn first to the petitioners' argument that due process bars the strict application of the fifteen-day appeal period under the Town's zoning ordinance. While they do not challenge the facial validity of the ordinance, they contend that "when specific intervening acts adjust the reasonable expectations of parties to a zoning case, the rules of due process must still be complied with." In particular, they claim that during the fall 2005 meeting Holloway and Kelsey had with the zoning administrator, she created a reasonable expectation that she would provide them with direct notice of any further progress in the Strochlics' proposed project, and that she misled them about the "true pendency" of the Strochlics' proposed project.

"It is well settled that an elementary and fundamental requirement of due process is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Dow v. Town of Effingham*, 148 N.H. 121, 129 (2002) (quotation omitted). Because the petitioners do not challenge the facial validity of the zoning ordinance, we focus our review upon whether the trial court's affirmance of the ZBA's dismissal of the appeal is unsupported by the evidence or is legally erroneous with respect to the "intervening acts" they have identified.

We first turn to the petitioners' contention that during the fall 2005 meeting, the zoning administrator created a reasonable expectation that

she would provide Holloway and Kelsey with direct notice. At the hearing before the ZBA, counsel for the petitioners explained that during their meeting, the zoning administrator gave Holloway and Kelsey two sketches of the Strochlics' lot with different interpretations of the setback requirements and discussed the potential building envelope. Counsel contended that the petitioners left the meeting with the "understanding" or "feeling" that they would be notified directly as proceedings went forward concerning the lot and if any permitting occurred. Kelsey did not attend the ZBA hearing, but Holloway did participate. When she was asked about the basis for her belief, she responded:

> You know, this was a . . . more than a year ago. . . . All I can tell you is [the zoning administrator] was very helpful and we left feeling that we were in the loop and [the zoning administrator] well knew we were very concerned about the presumed size of the house on this small piece of property and that we were concerned about set backs.

For her part, the zoning administrator testified before the ZBA that she could not recall ever telling anyone who came to the zoning office that she would send them "something that wasn't absolutely required," that she often told people to get in touch with her if they have concerns, and that due to the "crush of business [the] staff . . . just [could not] track . . . each person's interest . . . if [no legal notice was] required." This was the extent of the evidence before the ZBA regarding the petitioners' claim that during their meeting in the fall of 2005 the zoning administrator somehow communicated to Holloway and Kelsey that she would provide direct notice to them and thereby vary the normal procedure of posting public notice as required by the Town's ordinance. Based upon this record, we conclude that the petitioners have failed to establish that the trial court's affirmance of the ZBA's decision was unreasonable or unlawful. *See Harrington*, 152 N.H. at 77.

The petitioners also contend that the zoning administrator misled them during that same meeting regarding the pendency of the Strochlics' application for a permit. They claim that when she provided Holloway and Kelsey with the two sketches, the zoning administrator presented interpretations of the setback regulations "as if there was still a question in her mind." According to the petitioners, however, the zoning administrator had already decided how to classify the private right-of-way known as Weatherby Terrace and how to apply the setback rules to the Strochlics' lot. The petitioners contend that because they were misled, they were denied the opportunity to meaningfully understand the zoning issues and prepare a proper appeal.

The petitioners' argument, according to the Town, was not preserved for our review. *See* RSA 677:3 (2008) (issue not raised in motion for rehearing should not be considered by superior court unless good cause shown); *McNamara v. Hersh*, 157 N.H. 72, 73-74 (2008) (ZBA should have first opportunity to address alleged errors made in its decision). We observe that the petitioners made no claim of being misled before the ZBA but averred that: "At [the fall 2005] meeting, [the zoning administrator] obviously was trying herself to identify the setback issues on this particular property, because of the uniqueness of the lot . . . ." On appeal before us, however, they point to an April 2005 letter issued by the zoning administrator that they assert "was uncovered after the ZBA hearing" to demonstrate that she had already decided how to apply the setback regulations by the time they met in the fall, but she failed to disclose this decision during their meeting. We conclude that even assuming, without deciding, that the claim of being misled is properly before us, the petitioners' argument fails on the merits.

■ The petitioners do not establish how the zoning administrator's failure to disclose her purported decision in April 2005 regarding the setback requirements for the Strochlics' lot interfered with their ability to comprehend the significance of the zoning issues and to properly prepare an appeal after they met with the zoning administrator in May 2006. Petitioners' counsel informed the ZBA that during this second meeting with the zoning administrator, Holloway and Kelsey "had a chance to take a look at the file" and Holloway testified that she was "astounded" at the final drawing. Even if the petitioners were misled in the fall of 2005, they had actual knowledge of the final footprint in May 2006. Further, they had the opportunity to see the permit itself through, at a minimum, the public posting procedure that the Town was required to follow under its zoning ordinance. We also note that the question of whether the permit was in the file at the time of the May meeting was not challenged by the petitioners before the ZBA. While the fifteen-day appeal period may have lapsed shortly before this meeting, the alleged failure of the zoning administrator to reveal her April 2005 letter to the petitioners during the fall 2005 meeting had no bearing upon their understanding of the final plans made available to them in May 2006. Nonetheless, the petitioners failed to pursue an appeal for nearly six months after the May 2006 meeting. Accordingly, the petitioners have not established that the trial court's rejection of their due process argument was unreasonable or legally erroneous.

Our analysis of the petitioners' due process argument renders it unnecessary for us to address their challenge to the trial court's ruling that "there is no evidence in the Certified Record or the pleadings that would suggest that they were misled by actions of the zoning administrators."

Additionally, because the substance of the petitioners' argument that they provided sufficient evidence and a legal basis to establish that the ZBA's decision was unreasonable simply reiterates their position that the zoning administrator misled them and provided them with inadequate information, we need not address it as a separate argument.

## IV

We next address the petitioners' argument that New Hampshire law imposed a constitutional duty upon the zoning administrator, in response to a direct inquiry, to properly inform them about the status of zoning approvals on the Strochlics' property as well as the appeal process open to them. They claim that the trial court erroneously interpreted their argument to claim that the zoning administrator had a duty to point out all of the applicable appeal deadlines. Rather, they contend that they were arguing that the zoning administrator had a duty to provide "basic information concerning an abutter's development plan and the basic permit and appeal process." The Town argues that the petitioners' claim that the zoning administrator failed to assist them was not preserved before the ZBA. See McNamara, 157 N.H. at 73-74. Even assuming that the trial court misconstrued the nature of the petitioners' argument and that the argument was preserved for our review, we conclude that it lacks merit.

■ We have consistently held that municipalities have a constitutional obligation "to provide assistance to all their citizens" under Part I, Article 1 of our State Constitution. Carbonneau v. Town of Rye, 120 N.H. 96, 99 (1980); see also Richmond Co. v. City of Concord, 149 N.H. 312, 314 (2003); Savage v. Town of Rye, 120 N.H. 409, 411 (1980). In the context of aiding property owners seeking municipal approval to develop their property, our focus has been "aimed at preventing municipalities from ignoring an application or otherwise engaging in dilatory tactics in order to delay a project." Richmond Co., 149 N.H. at 315. We have used reasonableness as a benchmark for assessing whether municipalities have fulfilled their constitutional obligation to provide assistance. See id. at 316.

In the cases the petitioners rely upon, we addressed situations in which property owners engaged town officials in an attempt to abide by municipal ordinances in order to develop their land. See id. at 313; Carbonneau, 120 N.H. at 97; see also Savage, 120 N.H. at 410. In Carbonneau, for example, we admonished the Town of Rye for its position that it was "not in the business of telling [the developer] what to do so that he [could] get approval." Carbonneau, 120 N.H. at 99 (quotation omitted). Here, we are facing a situation in which town residents approached a town official to both inquire and express concern about a proposed project in their neighborhood. While we have no doubt that the constitutional duty imposed upon

municipalities to provide assistance to their citizenry has relevance when an abutter or interested resident inquires about a proposed project, we cannot accept the scope of the duty the petitioners seek to impose in this case.

The petitioners contend that because Holloway and Kelsey inquired and expressed concern about the Strochlics' project, the zoning administrator had a duty to provide them with basic information about the proposed plan and the basic permit and appeal process. They point to no evidence in the record, however, that Holloway and Kelsey raised any particular question or demonstrated any particular confusion about the process that the zoning administrator failed to address, including inquiries about the stages of the process, the procedures for protecting their rights or their ability to challenge the proposed project. We note that in their memorandum submitted to the trial court, the petitioners summarized their exchange with the zoning administrator, repeatedly mentioning: "specific inquiries"; "[u]pon inquiry"; "after inquiry." They did not identify, however, any place in the record that documents the particulars of any asserted inquiry expressed to the zoning administrator. At most, the record supports the conclusion that Holloway and Kelsey inquired and expressed concern about the anticipated scope and placement of the proposed house.

■ The petitioners do not suggest that any statutes, local regulations or the particular file regarding the Strochlics' project were unavailable to them. Rather, the record supports the conclusion that in the fall of 2005, the zoning administrator discussed with Holloway and Kelsey the concerns that they expressed. In fact, Holloway testified that the zoning administrator "was very helpful and . . . answered our concerns and our questions." Though the petitioners contend that the zoning administrator failed to provide them with her April 2005 letter concerning setbacks for the Strochlics' new home, the record establishes neither how this letter finally materialized nor whether the letter was withheld or secreted with any pretense or intent. Moreover, in May 2006, Holloway and Kelsey had the opportunity to review the final plan and the file itself. The petitioners do not dispute that the Town followed the public posting procedure when the permit was issued on April 28, 2006, and thus, at a minimum, Holloway and Kelsey had an opportunity to observe this notice. The record simply does not support a conclusion that the zoning administrator ignored concerns or questions expressed to her by Holloway or Kelsey about the process, engaged in dilatory tactics, or otherwise refused or failed to offer assistance on inquiries they made or confusion they expressed.

On this record, we cannot endorse imposing upon the zoning administrator a constitutional duty to have taken some initiative to educate Holloway and Kelsey about the pendency of the project and about the

permit and appeal process. Accordingly, we conclude the petitioners have failed to establish that the record supports their contention that the Town failed in its constitutional duty to provide assistance to its citizens.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.